WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
|     Plaintiff, ) | |
| ) | No.  CR 17-602-TUC-CKJ |
| vs. ) | |
| ) | |
| Brian Edward Meyers ) | **ORDER** |
| ) | |
|     Defendant. ) | |

Pending before the Court is the Motion for Compassionate Release Prior to Sentence Expiration (Doc. 272) filed by Brian Edward Meyers ("Meyers").

*Background*

The Ninth Circuit Court of Appeals has summarized the factual background of this case as follows:

> In March 2017, Roxanne Carpenter, Fausto Velazquez, Phoenix Begay, and Brian Meyers (together, codefendants) kidnapped Angel Gonzalez—who was suspected of stealing marijuana from a Mexican cartel—to turn him over to the cartel in exchange for thirty pounds of marijuana. After a five-day trial, a jury convicted Carpenter and Velazquez of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c), and kidnapping, in violation of 18 U.S.C. § 1201(a)(1). . .
>
> * * * * *
>
> In early 2017, Gonzalez, who worked for a member of the Mexican cartel, and Velazquez, transported twelve 88-pound bundles of marijuana from Hereford, Arizona to Carpenter's home. At some point, a portion of the marijuana disappeared from Carpenter's home. The cartel suspected that Gonzalez was responsible for the missing

marijuana, and word of there being a bounty on his head spread through the community. Armed cartel members went to Carpenter's home, looking for the missing drugs and Gonzalez. Two days later, the police went to her house and asked questions about the cartel members who had recently visited the house.

In March 2017, Begay informed Carpenter that he could no longer hold off the cartel, and that the cartel was going to make Velazquez pay for the missing marijuana. Meyers testified at trial that he believed that the codefendants planned to kidnap Gonzalez to turn him over to the cartel to protect their "family." Velazquez negotiated with the cartel, arriving at a final price of thirty pounds of marijuana in exchange for Gonzalez.

On March 29, 2017, Meyers borrowed Carpenter's vehicle, first picking up Gonzalez from his apartment, then Begay from his home, under the pretense that they were taking Gonzalez to Elfrida, Arizona so that he could detox from drugs. On the way, Meyers changed the plans and they drove instead towards Douglas, Arizona to obtain methamphetamine. Gonzalez testified that after he fell asleep, he felt a taser[2] on his neck. Begay and Meyers then handcuffed him, shackled his legs, duct-taped his hands, feet, and face, and shoved him into the car's trunk.

[2]The actual weapon used was a cattle prod.

Begay and Meyers drove to a Safeway outside Bisbee, Arizona to meet Carpenter and Velazquez. While Meyers kept watch in the car, Carpenter, Velazquez, and Begay entered the store, where Carpenter bought water, candy, and duct tape. Carpenter decided that the group needed to leave the Safeway parking lot, and they drove to the home of her friend, Keri Hall. At Hall's house, the codefendants waited to hear from the cartel, and smoked methamphetamine. Meanwhile, Gonzalez remained bound in the trunk. When the codefendants learned that the cartel members could no longer meet them on the American side of the border, Carpenter volunteered to take Gonzalez to Mexico. She drove him, still in the trunk, through the Naco, Arizona port of entry. Just across the border, Gonzalez found the trunk latch, opened the trunk, yelled for help, and managed to exit the trunk. Carpenter accelerated away, ditched her car, and then attempted to reenter the United States on foot.

At the border, federal agents arrested Carpenter on kidnapping-related charges. A two-count indictment was later filed charging all four codefendants—Carpenter, Velazquez, Begay, and Meyers—with conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c), and kidnapping, in violation of 18 U.S.C. § 1201(a)(1).

Meyers and Begay pleaded guilty, while Carpenter and Velazquez proceeded to trial . . .

*United States v. Carpenter*, 923 F.3d 1172, 1176–77 (9th Cir. 2019).

Meyers pleaded guilty to Conspiracy to Kidnap. The plea agreement provided for a stipulated sentence of 135 months imprisonment. On November 27, 2017, the Court calculated a sentencing guideline range of 97-121 months of imprisonment; however, the parties informed the Court they agreed Meyers should receive credit for his truthful testimony. Meyers was sentenced to 82 months imprisonment, with credit for time served,

followed by four years of supervised release. Meyers' release date is currently set for January 29, 2023.

Meyers' medical records indicate that, while incarcerated, he tested positive for COVID-19. His illness did not require hospitalization; in fact, the records do not indicate Meyers suffered any symptoms with this illness.

Meyers suffers from COPD, high blood pressure, Hepatitis C, and emphysema. He uses two inhalers, Albuterol and Mometasone Furoate, for shortness of breath, every day and takes Amlodipine, Hydrochlorothiazide, and Lisinopril to control his hypertension.

Meyers has requested compassionate release and a home confinement placement from the Warden of Seagoville FCI. The Warden has rejected these requests. Meyers' appeal of this decision was denied. Additionally, although Meyers filed a Regional Administrative Remedy Appeal (BP-10) within 20 calendar days of the Warden's response, Meyers has not received a response. The government agrees Meyers has exhausted his administrative remedies.

On December 14, 2020, Meyers filed his Motion for Compassionate Release Prior to Sentence Expiration (Doc. 272). The government has filed a response (Doc. 275) and Meyers has filed a reply (Doc. 276).

Meyers seeks compassionate release pursuant to the First Step Act. He is now 44 years of age and has served approximately 51% of his full term and approximately 60% of his statutory term of imprisonment.

*First Step Act*

The First Step Act went into effect on December 21, 2018. See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132

Stat. 5194, at *5239 (capitalization omitted). That section now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A). The parties agree Meyers has exhausted his administrative remedies.

The Act provides that a sentence may be reduced for "extraordinary and compelling reasons." 18 U.S.C. 3582(c)(1)(A)(i). District courts are granted broad discretion in determining whether to grant relief. *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020), *citation omitted*.

The Application Notes of the U.S. Sentencing Guidelines § 1B1.13 provides, in relevant part, that extraordinary and compelling reasons exist if:

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \* \* \*

U.S.S.G. 1B1.13, App. Notes

In exercising discretion under § 3553(a) and the First Step Act, compassionate release "due to medical conditions" is generally treated as "a rare event." *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo. May 9, 2019); *see also United States v. Joling,* No. 6:11-CR-60131-AA, 2020 WL 1903280, at *1 (D. Or. Apr. 17, 2020) (compassionate release

as an exception to 18 U.S.C. §3582(c) is "rare"); *United States v. Clark*, 2019 WL 1052020 (W.D.N.C. Mar. 5, 2019) (denying relief, which is "extraordinary"); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (same); *United States v. Casey*, No. 1:06CR00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019) (same). Prisoners typically only obtain relief after serving a significant term of incarceration. *See, e.g., United States v. McGraw*, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (granting the motion and noting defendant already served "nearly 17 years, a significant sanction").

*Compassionate Release*

Meyers asserts that, although his illness did not require hospitalization, he has tested positive for COVID-19; his medical records indicate Meyers did not suffer any symptoms with this illness. Additionally, Meyers suffers from COPD, high blood pressure, Hepatitis C, and emphysema. He uses two inhalers, Albuterol and Mometasone Furoate, for shortness of breath, every day and takes Amlodipine, Hydrochlorothiazide, and Lisinopril to control his hypertension. Meyers' medical records indicate Meyers also suffers from severe Opioid Use Disorder and severe Stimulant-related Disorders – Amphetamine-type Substance. The records also indicate Meyers is medically designated as Care Level 1 with no work restrictions (except for the Hepatitis C condition) and that Meyers generally reports he is doing well, is active, and exercises regularly.

The Court considers that Meyers' "medical conditions do not rise to the level of terminal illness or substantially diminish [Meyers'] ability to provide self-care from within [the facility]" *United States v. Wilfred*, 2020 WL 4365531, at *4 (E.D. La. July 30, 2020). Further, there is no basis to conclude that Meyers is not receiving adequate care for his conditions. While the Court agrees with the parties that Meyers' medical conditions qualify as an extraordinary and compelling reason to support compassionate release, the conditions are relatively common. *See e.g.* https://www.cdc.gov/copd/index.html (16 million Americans suffer from COPD), https://www.cdc.gov/bloodpressure/facts.htm (45

percent of adults in the U. S. suffer from hypertension), https://www.cdc.gov/nchhstp/newsroom/2018/hepatitis-c-prevalence-estimates-press-release.html; *see also* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html,. This Court is reluctant to find compassionate release is warranted where the conditions are suffered by many Americans. *See e.g. United States v. Ebherhart*, --- F.Supp.3d ---, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence…").

Even if the Court found that extraordinary and compelling reasons warranting compassionate release had been demonstrated by Meyers, the Court would also need to consider the § 3553(a) factors before determining whether compassionate release is appropriate. Meyers' history indicates that he has been convicted of at least four felonies, had multiple probation/parole revocations, and had multiple failures to appear. The circumstances of the offense indicate Meyers lured the victim into his car and then violently participated in the kidnapping of the victim. Further, Meyers expected to be compensated for his role in the offense and expected Mexican cartel members to kill the victim.

Additionally, Meyers received a significant reduction of his sentence in exchange for his cooperation. In considering the seriousness of the offense, Meyers' individual characteristics, the need to promote respect for the law, and to provide just punishment for the offense, the imposed sentence of eighty-two (82) months imprisonment remains an appropriate sentence. Although Meyers has participated in programming while incarcerated and has family support, a further reduction would not further the goals of the federal sentencing provisions. Lastly, in its discretion, the Court declines to find compassionate release is warranted in this case. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief).

Accordingly, IT IS ORDERED the Motion for Compassionate Release Prior to Sentence Expiration (Doc. 272) is DENIED.

DATED this 10th day of March, 2021.

_Cindy K. Jorgenson_
Cindy K. Jorgenson
United States District Judge